Your Honor, I'd like to reserve three minutes of my time for rebuttal. May it please the Court. John Shume, on behalf of Mr. Francis Ogata, Sr. The defense theory at trial was that the government's evidence was insufficient to prove beyond a reasonable doubt that Mr. Ogata was the individual that picked up the package. Two erroneous rulings at trial denied him the right of a fair trial and led to him being convicted. Prior to trial, the defense moved to exclude evidence as 404B, both the shipping labels and a prior drug conviction. Those issues were litigated, and both of them resolved unfavorably for Mr. Ogata. And we review for abusive discretion. Abusive discretion on the admission of the 404B for the particular prongs, it is a de novo review. Okay? As far as the labels go, prior to trial, the defense moved to exclude the labels as 404B. An evidence-your-hearing was held, and the U.S. attorney representing the government told the judge that there would be a police officer from the Hawaii County Police Department come to court and lay the foundation for photographs of the labels that were found inside the residence of Mr. Ogata, pursuant to a search warrant. And it turned out that the labels came from the post office residence. Exactly, Your Honor. But when Judge Gilmour decides to admit them, she knows that they came from the post office, correct? At this time, she does, Your Honor. So, yes, that was a mistake. But by the time Judge Gilmour makes her decision, she knows what the mistake was, and she now understands the facts and is ruling based on the truth of the matter. She is. At the ruling, she says this is not 404B evidence. This is fruits of the search. And based on the prosecution being able to tie them together, she allows them in. But what you're challenging is her decision to admit the labels at trial. So there was a second order, right? So then it's disclosed at trial that, in fact, these labels were not found at Mr. Ogata's residence, and then she considers it in light of this new information and says, nevertheless, they're admissible. Yes, Your Honor. She says that they are now admissible once again, or as 404B evidence. What happens is she says it's not. What is it? She looks at 8036, I think, right? Yes, Your Honor. She admits it as a business record exception, but then when she later instructs the jury on what they can be used for, she says that they may be used to prove the defendant's knowledge, opportunity, intent, and absence of mistake or accident. So it's a limiting instruction to ensure that it's not used as character evidence. That is correct. That she gives. What happens at trial, though, is we run through all the witnesses, and as we're finishing, the judge then asks, well, when is this police officer going to come in? And at that point in time, the assistant U.S. attorney says, now that I've had a chance to do all this, I realize that there is no police officer and there were no labels found at trial. I object to their admission. The judge says, you waived that objection because you didn't object when they were offered through the postal inspectors. Interesting that the judge says when we discuss this is that she, too, says, I, too, expected this to be tied up. I, at that point in time, object because there's no evidence that Mr. Ogata ever received these packages. There's no evidence at all in the record that these packages, where the labels existed at the post office, ever made it to the residence. And you actually, I thought, drew it out at trial through your cross-examination that there was no evidence that the packages had anything to do with the offense, that they had anything to do with Mr. Ogata, that, I mean, that they really were not very relevant. You had a pretty extensive cross-examination on that point. I believe I did, Your Honor. I believe I did, Your Honor. Even more important was that by the time Mr. Ogata even began to live in the residence in November, five of the packages would have already been delivered. So there were only three packages that could have been even delivered when he was there. And we had four other adults that had access to the box, plus two teenage children. And I asked at the time when it learned that the packages were not fruits of the search, but they were what was found in the post office, that they're completely irrelevant because they have no nexus to Mr. Ogata, and that the judge should strike them from the record so it would not potentially confuse. So there's a question about relevance. I guess that's 402, relevance. But the district court thought they were relevant, that there was a proper foundation for them. So the real question is, if we agree that they meet the very low bar for relevance, then what was wrong with admitting them since they had no, the government presented no evidence? I think they had been intending to connect it up to Mr. Ogata with testimony of Amanda Ishikawa and decided not to. If they had no relevance then, or had very little connection with the defendant, it's hard to see why they were inadmissible other than on the low bar of relevance. Well, if they are not relevant, then they should not have been. Right, if they're not relevant. But the district court said, well, they're relevant, they make it more probable that somebody picked up the package because Crystal Ogata testified that she didn't. So I guess there's a question about the relevance, the 402, relevance ruling. But is that really the focus of your argument? I mean, are they prejudicial? Aside from not being relevant in your view, what's the prejudice from the admission of these? If I can go back to the judge's question, I don't believe that they are relevant at all, and I believe that they should have been stricken from the record. And the reason I believe this is this is a, now to answer your question, Your Honor, this is a circumstantial evidence case. And any evidence that's improper in this matter, I believe, will lead to prejudice to Mr. Ogata and lead to a conviction. And the fact that they have now been able to portray eight other packages being delivered that were likely to contain methamphetamine, and Crystal Ogata testifies that she wasn't the one that received them. By inference, Mr. Ogata was. And you have the distinct likelihood that the jury was prejudiced by that evidence coming in and being painted as other crimes committed by Mr. Ogata. On the other hand, even if it came in improperly, and I'm not sure I think it was abuse of discretion, there's an awful lot of evidence tying him to this particular package. He ends up with the marked little baggie in his car. You say it's a circumstantial case, but the circumstances are pretty strong against him. Your Honor, I believe that you could look at it that way. You could also look at it a different way. The eyewitness identification by the postal inspector was tenuous at best. She had never seen Mr. Ogata before. She was shown what we know as a picture of what was supposed to be Amanda Ishikawa and Mr. Ogata, but those pictures were not produced at court for anybody to see. Based on a picture that she sees, she now identifies Mr. Ogata as the same individual, and he is wearing a baseball cap and sunglasses when she sees him. The testimony from the two police officers that are sitting over 200 feet away looking down an alleyway are able to say that one is 100 percent certain that this 5'6", 145-pound individual wearing black hat and sunglasses is Francis Ogata. The other one is only 75 percent certain. And I assume from the name Japanese? Yes, Your Honor. Was the car that the fake methamphetamine was found in registered to Mr. Ogata? No, Your Honor. It was a rental car. And he had rented it, though? I don't believe it was under his name. Was there evidence at trial who read it? There was a rental car agreement that was admitted. I thought he had rented it. Maybe I'm wrong. And I could be mistaken on that point. Was there argument at trial that this was not the car he was using, that this was somebody else's car? The argument at trial was that he had been at home the entire morning and that someone else looking like him had used the car and had gone down and picked up the package. But he used the car that was ordinarily under his dominion? No, Your Honor. He drove a BMW wagon or a BMW. This was a SUV, rental car SUV, unregistered to Mr. Ogata. He had never driven it before. And whose name was on the rental contract? I thought it was either – I thought it was Amanda Ishikawa. I could be wrong on that. It might have been Mr. Ogata's. Okay. The other issue becomes the drug, the prior drug conviction. The case law says that when you're using it to prove knowledge and or intent, there should be a very close nexus to them. I'm using the case – studying the cases of Garcia-Orozco and Hernandez-Miranda, both cases where prior convictions were admitted and where they were found to be erroneous because the connection was not tight enough for the intent or knowledge prong. Here, this wasn't Mr. Ogata saying, I didn't know what was in the box. The defense was someone else picked up that package. It was not Mr. Ogata. For this evidence of a prior drug conviction to come in, not necessary because we're not challenging knowledge and intent. We're saying it wasn't him. It would prejudice the jury to see that this person had once before been involved with methamphetamine, albeit there were two street-level distributions as part of a larger conspiracy where he was alleged to have distributed 20 grams, and now we're talking about a pound of methamphetamine, in a rather complicated and complex postal scam, evidence by the other eight packages for the last year had been sent to that post office. Now, you say postal scam. What's the scam part? Drugs being sent through the post office. Yeah, no, I just thought it was just ordinary shipped through the post office hoping that the dog doesn't pick it up. Scam was a bad word, Your Honor. Okay, okay. So, in this aspect, the prior drug conviction to show his familiarity with drugs, as well as these other eight packages that are now being tied to him, were likely in the defense's belief to result in the jury convicting him on what we believe was a rather tenuous circumstantial evidence case as to his identity. The last issue that comes up is the plea agreement or possible plea agreement, whatever we want to call it. Let me ask you a question about that. Is your claim here really an in effect? I mean, I don't mean to cast dispersions. Is it really an ineffective assistance claim as opposed to a plea agreement claim? It shouldn't be an ineffective assistance claim. But, I mean, I don't see a firm offer from the government that wasn't accepted. In other words, it's hard to view this case as people having agreed to a plea. Can you tell me where the agreement is? I can, Your Honor. And I don't believe that it is ineffective assistance. I don't either. I'm just trying to figure out if we don't have a real agreement that anybody's ever agreed to, then I'm not sure. The only other way to attack it is to say somebody should have gotten me one of those. I believe I had. I know. And that's why I asked the question gingerly. So tell me where you think the agreement is. The agreement exists on the day in question. I'm not sure the exact day where I call the assistant U.S. attorney handling the case and am told, look, if he'll plead, debrief, give us the name of the person that did get the drugs, we will not file the 851. I send an email right after that conversation to the assistant U.S. attorney and the courtroom manager for the judge saying I'm going out to FTC to talk to my client about this plea agreement. I get out there that night. I come home around 10 o'clock at night, and I send another email to the same two people saying we don't need the final pretrial conference. We have a deal worked out. The next morning, the courtroom manager is insistent on getting a change of plea in before the court, and I respond again, we need a little bit of time to work out the details of this. How about we move it to Friday or towards the end of the week? I forget the exact wording I used. And then within a couple of hours, the 851 is filed. So if you needed more time to work out the details of the agreement, how do you have an accepted bargain? The practice that I'm at least used to with the assistant U.S. Put aside whether or not people were shady or didn't act the way you expected them to. I'm trying to look for a contract here. What was the contract? That if Mr. Elgato would debrief, provide the source of the person either shipping the drugs or who the drugs were going to, and would plead, the government would not file the 851, and he would not be enhanced. So what additional details did you need to work out? I needed to set up the debriefing date. It sounds as though the government thought better of the deal and decided it wasn't going to sign on the dotted line. I mean, I'm just hearing your side of the story, but it sounds as though somebody upstairs said to the AUSA who'd sent us the deal, somebody upstairs said, ah, we're not doing that. By practice, before this particular assistant United States Attorney's Office, was indeed the fact that in two prior cases, I had negotiated the exact same deal. There's nothing ever in writing. You're told to trust, and if you trust and your client comes through, you'll be taken care of. The crooks of this particular issue is that it then gets set for a motion hearing on whether or not a plea agreement existed, and both the assistant U.S. attorney and the judge said, we're going to have to have a hearing, and if we're going to have evidence and it's going to come from me, you need to withdraw because you can't be a witness in your own case. We show up at the hearing, and there is no motion hearing. The judge rules without a hearing, deny my client the right of a hearing to prove that there was a plea agreement and it should be enforced. Let me go back to my question, though. Yes, Your Honor. Is it your position that this oral agreement is enforceable? I do so. Even though it wasn't accepted by the court? Yes, Your Honor. Okay. Okay. Why don't we hear from the other side? We've taken you up a little bit over time, but we'll give you a chance to respond. That's fine, Your Honor. Thank you. Thank you. Hello. Good morning. My name is Assistant U.S. Attorney Chris Thomas for the United States. I want to focus first on the labels. Can we focus first on this plea agreement or non-agreement? Were you the other side on this deal or non-deal? Yes, Your Honor. I was the trial attorney. Your Honor, as stated on the record, my recollection of that call was two things. Mr. Shum informed me that his client was going to plead guilty and wanted to be debriefed. Based on that information, the next action that I took, okay, he's going to plead guilty. My obligation or my duty as an ASA is to file that special information, which I did. Now, the policy of our office, despite what prior experience Mr. Shum may have had, is that if there is a prior conviction for a drug offense, you file the special information. And that's what I always do. This is the first experience that I've had with Mr. Shum in a drug case. But in all other instances, if I have a defendant who has a prior conviction, I'm going to file an 851 before he pleads. Let me go back to Mr. Shum's argument and see where this takes us. He says, you dispute, he says, well, my agreement was that if my client pled guilty and debriefed, you wouldn't file the special information. You say that wasn't our agreement. Why shouldn't the judge have held an evidentiary hearing to determine which one of you was accurate? And I'm not imputing bad motives to either side. You may have had different recollections of the conversation. Why shouldn't the judge have held an evidentiary hearing? I understand that, Your Honor. And the answer to that question is the timing of it. Because the phone call took place in August 2012. The trial in this matter didn't occur until January of 2013. Now, in terms of the case law, U.S. v. Savage, if the defendant believes, and it has to be a plea agreement, first of all. I was going to add, that's where I'm leading to. I'm trying to figure out, let's assume that you had this oral, let's assume that he's telling the accurate version of the events, that he said, my client will plead guilty, debrief, if you don't file an 851. And that was the offer, and that he called back and said, fine, we accept that. Is that an enforceable plea agreement? No, it's not, Your Honor. The only exception to the rules stated in U.S. v. Savage is if there was detrimental reliance. And detrimental reliance can be incurred in two ways. First, that based upon any alleged representation, he would have entered a plea of guilty. The second instance would be, based on any alleged representation, he gave information to the government as a result of that alleged representation. Now, the reason why timing is important is, from August all the way to January of 2013, one, the defendant never pled guilty. Two, he never debriefed. Not only did he not plead guilty, he elected to go to trial. And fourth, when he could have raised the motion for specific performance, he failed to. And so that type of action is waived. And Rule 12 specifically states that. Because that's the type of motion that is brought to trial. Certainly not when you go through a five-day trial with all the evidence. And so, really, there was no case law. The defense counsel, at the motion for specific performance, couldn't cite a single case to support his position. Now, the government, in terms of fairness, supported the court in its inquiry. Mr. Defendant, would you like to be debriefed now? Would you like to explore the opportunity to cooperate and provide substantial assistance to the government, which would allow you to go below the mandatory minimum? The government was in support of that. Now, for whatever the reason the defendant may have had, he made an election. And the court went to painstaking efforts to ensure that it was a knowing decision that he made, because she gave it to him twice. At the first sentencing hearing on May 1st, and then she gave the defense counsel two months to brief this issue, and then again on July 1st she gave him that opportunity. In both instances, the government supported that request. The defense would have talked to him, would have explored any information that he may have been willing to provide about his source or about any type of drug dealing. The defendant made a knowing decision not to debrief. And the court had no discretion at that point. The mandatory minimum became applicable. Let me go back to the claims of error at trial. What did the shipping labels tend to show? Why were they relevant? Why did they make it more probable than not that a fact, that issue that you had to prove was indeed true? Yes, Your Honor. To answer that question, I need to put this case into context. This was a parcel interdiction where it was intercepted through the course of the mail. On that parcel was the name of Crystal Lugana. All of the evidence that was relevant or that was presented during the trial occurred only on one day, February 3rd, 2012. And so what the government's evidence was is that they had this parcel addressed to somebody else and the defendant was the one that picked it up. Now the defendant's defense was it wasn't me. I wasn't even there. I was home the whole morning. And so what the government wanted to admit the labels for was to show that this defendant had the opportunity, the intent, and that his picking up this package wasn't an accident and it wasn't a mistake. Yeah, and how do these labels help show that? Because he says I wasn't there. And if he wasn't there, okay, so how do these other labels similarly addressed show that he was there? Yes, Your Honor. I mean, we have maybe a little evidence that he was there for this package, eyewitness identification that seems a little tenuous. But we get zero evidence as to pick up the other ones. Yes, Your Honor. Help me out here. With respect to the foundation for the labels, Inspector Ron Corley laid the foundation for that. It was a business records exception foundation. Now let's assume that they made the business records exception. Judge Fletcher is asking you why do they show he was the guy who picked up the package this day? It's a circular argument because it's a business records exception because it showed that the parcels were delivered, first of all. So we have eight parcels. It shows that somebody picked them up. Correct. Someone who wasn't Crystal Ogata because she testified that she did not pick them up. Exactly. So what we have is we have, first of all, that they were picked up because that's why they have a copy of it. And then later in the trial, we have the testimony of Crystal Ogata who says, hey, you know what, it wasn't me. I don't even know who these people are. I didn't expect anything from there. It's not me. So it showed that somebody was mailing parcels that were similar, that were picked up by someone who wasn't Crystal Ogata. Correct. Is that the best that we can get from that evidence? Yes, Your Honor. And please, again, context is important because one of the expected witnesses who would have tied everything up, making it more relevant, was Amanda Ishikawa who requested immunity and that was set forth in her brief that she was going to give a completely contradictory statement to what her statement was to police on February 3, 2012. So as a result, that was cut off. What the government was left with was the evidence that we're discussing right now. And the government was concerned about that. It was concerned because it didn't want the jury to be misled. And so during the course of its closing argument, those labels came up. The government brought it up. And first of all, it tracked the language of the limiting instruction of the court regarding the labels, word for word. And then to make sure that the jury grasped the concept of how these labels apply in this case, as part of the record in Appellant's Excerpts of Record, Volume 3, on page 38 during the closing argument, there was a slide that had 440B evidence, the prior conviction, and the eight labels. And it was important to the government that those two were next to each other because the representations in the closing argument was pointing to the labels, word for word in the closing argument. You can use this information, the labels, to determine if it was the defendant's intent to gain possession of this parcel. Not a word about, oh, it could have had drugs in it. Nothing like that. Limiting instruction and then this argument. You can use this information to determine if it was the defendant's intent to gain possession of this parcel. That's on page 38. And to distinguish that from the conviction, then I stated you can use that information to determine if the defendant had knowledge of the existence and the contents of the parcel because his prior conviction was methamphetamine. So the government was aware that it was an issue. The government was concerned that the jury not be misled. And this issue of the fact that where it was found in the home versus the post office, the jury did not know that. All they knew was that there was a business records exception made. And according to the closing arguments, the government ensured their understanding of how you use that particular evidence and what the distinctions were to ensure that they were not misled. With respect to the prior conviction, I understand its relevance. Why wasn't, and I understand we review for abuse of discretion, but it's quite prejudicial. And its relevance seems less compelling. Tell us why the judge appropriately allowed that kind of evidence in front of the jury. I mean, his argument was I wasn't the guy who picked up this package. He had some previous involvement with methamphetamine. Is that enough to, it seems to me it's almost a sure conviction once you introduce that. Is that enough to justify introducing the conviction? Okay, Your Honor, to answer that question, I would like to address it in two ways. The first is in context of this case, the fact that everything occurred in one day, what the government had to combat was that it was him who picked up this parcel. We have the testimony of the. Yeah, it seems to me you had a pretty strong case that he picked up the parcel. You had an eyewitness, you had the beeper. By the way, was the rental agreement in whose name was it? Yes, in addition to his wallet, Your Honor. Say it again, I didn't hear. In addition to his wallet and the car. Okay, but the rental agreement was in whose name? Correct, his name. His name. Yes. So it seems to me you had. In the middle of the. Right, so you had a rental agreement, you had the wallet, you had an eyewitness, you had the beeper, you had the package, outside in a place where he lived. Why do you need the prior? I mean, I guess my question in this case is why do you need the prior conviction? Well, Your Honor, it's, you know, when you step back and you look at it, what the government's case is, you know, we have to prove that this guy picked up this parcel. We don't have drugs in his possession. We don't have evidence where somebody eyewitnessed him holding the drugs. We have to take pieces from here from different witnesses all circumstantially to put it together. Now, what they could argue is that, oh, you know what, I had somebody else in the car. How does the government know that? Or I stopped, dropped it off, gave it to somebody else. Oh, that small little package just happened to fall out. I didn't know it was in there. Yeah, the beeper happened to fall out beside the road as I kept the rest of the baggage. Yeah, you know, I mean, in the 20 years I've been doing this, I'm still amazed at some of these explanations that come out during trial. And so to combat that, the government had to prove, okay, you know what, not only was the parcel in your possession not a mistake, but the fact that there was drugs in there was not a mistake because you've dealt with drugs and you know what methamphetamine is. Now, in terms of the Mr. Arvada didn't testify. No, Your Honor. But you could have used it then, obviously. So what you're doing is you're and I understand we review for abuse of discretion. What concerns me in cases like this is that you've got all this great evidence and then we've got something that's prejudicial value is quite strong. Its relevance may also be strong. And we introduce that in the case. And I worry that the jury, once it knows that this guy is a prior drug dealer, doesn't have to listen to anything else in the case. I don't know what to do with it. You made a decision to introduce it. I just wondered why in this case it was so relevant. Your Honor, just to address that concern that you have, I only have a few seconds left. You're already into our time, but please answer the question. It's okay. Oh, I'm sorry. That's all right. Oh, it's going up. I'm sorry. No, no, please answer the question. To answer your question, if you look at the record in terms of how it was introduced, it was a certified copy of the judgment. I put on the attorney who represented him at the previous case. I wanted to elicit evidence of how it was relevant, the fact that what he was caught for then, how it compared to this case, the amounts. But the defendant objected. And then he did? He did, yeah. I couldn't show you how it was relevant and why it was important. Thank you. Okay, thank you. Response. Your Honor, your question is so appropriate. Once you hear that he's a prior drug dealer, it all goes out the window. And if the government's case is really as strong as they say it is, why are they putting that information in? And that's why I started off by saying this was a circumstantial case based on his identity. And because of the nature of that, they chose to put in this highly prejudicial evidence that all but guaranteed a conviction. And along with the labels, your Honor, they're going back months before he even got there, and not a single person identified him as being associated with these labels any more than Crystal Ogata was. It came from a person named Pedro Ogata, and the other one I think was Jesse Montoya. No one established that Mr. Ogata knew any of these people. No one established that he picked up these labels. And as I said before, five of them would have been delivered before he was even living at the house. And there were four other adults and two adults. Let me pursue that point for just a minute, if you don't mind my taking you over time. He wasn't living at the house, but Crystal Ogata was living at the house? Exactly, your Honor. And are they husband and wife? They're sister and brother, your Honor. Sister and brother, I'm sorry. As was Sterling Ogata, her other brother who was living with her the whole time, and her two teenage children who had access to the house. And where was Mr. Ogata, your client, living at that earlier period? Prior to November, he was living in Honolulu. You have his ID, his Hawaii driver's license, with an address in Honolulu. And he was living in Honolulu. Okay. Thank you. Okay, thank you very much. Thank both sides for your helpful arguments. The United States v. Ogata now submitted for decision.
judges: FLETCHER, IKUTA, HURWITZ